582 A.2d 1000
IN THE MATTER OF HOWARD S. BORDEN, JR., AN
ATTORNEY AT LAW.

October 16, 1990.

## ORDER

The Disciplinary Review Board having filed a report with the Court, recommending that HOWARD S. BORDEN, JR. of TOMS RIVER, who was admitted to the bar of this State in 1958, be suspended from the practice of law for six months for violations of *DR* 6–101(A), *DR* 7–101(A)(1), *DR* 9–102(B)(4), *DR* 1–102(A)(4), *RPC* 1.1(a), *RPC* 1.2(a), *RPC* 1.3, *RPC* 1.15(b), and *RPC* 8.4(c), and good cause appearing;

It is ORDERED that the report and recommendation of the Disciplinary Review are adopted and HOWARD S. BORDEN, JR. is hereby suspended for a period of six months, effective

November 5, 1990, and until the further Order of the Court; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent shall be restrained and enjoined from practicing law during the period of his suspension and that he shall comply with Regulation 23 of the Administrative Guidelines Governing Suspended Attorneys; and it is further

ORDERED that respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs incurred in the prosecution of this matter.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter is before the Board based on a presentment filed by the District IIIA Ethics Committee.

Respondent has been a member of the New Jersey bar since 1958. In or about September 1987, respondent left the private practice of law. He is currently employed by the Ocean County Prosecutor's Office as an assistant prosecutor.

On March 30, 1981, Eldora Brinkley, the grievant herein, retained respondent to file suit against a moving company, seeking damages for the unlawful sale of furniture belonging to grievant. At their initial meeting, it was verbally agreed that grievant would pay respondent the sum of $50.00 for costs of suit, and that respondent would receive a contingent fee of one-third of the amount recovered in grievant's behalf. Thereafter, grievant paid the $50.00 sum to respondent.

Respondent instructed grievant to leave her original documents in his possession, so they could be duplicated, and to contact respondent later to arrange for the return of these original documents. Among those documents was a signed contract between grievant and the moving company, requiring that all claims for damages be filed within one year.

A few weeks after their initial meeting, grievant went to respondent's office to retrieve her documents. At that time, respondent informed her that "... the papers were being taken care of in court" (T10–15 to 16).[1] For the next four months, grievant telephoned respondent every week to discuss the pick-up of her papers; respondent invariably replied that "... the case was being filed in court [sic] ... that the papers were being taken care of in the court" (T11–12 to 19).

Dissatisfied with respondent's reports about the progress of the matter, grievant repeatedly asked respondent, over the course of the next three years, to "put in writing exactly what was being taken care of." Finally, on June 7, 1984, respondent wrote the following letter to grievant:

> The case in which I am representing you is being actively pursued. I have your papers and will keep you informed of the progress and trial dates. Any offers of settlement will be transmitted to you to be discussed with you.
>
> Please don't hesitate to contact me at any time. [Exhibit P–5 in evidence.]

On June 26, 1986, grievant asked respondent where the case had been filed. Respondent replied that it had been filed in Avenel. When grievant contacted the Superior Court Clerk's office, she was informed that no complaint had been filed. Thereafter grievant retained new counsel and filed an ethics grievance against respondent.

Ultimately, respondent returned some of grievant's papers, but not the contract between grievant and the moving company. Among those papers was an unsigned, unfiled copy of a com-

---

[1] T denotes the transcript of the district ethics committee hearing on August 9, 1989.

plaint (Exhibit P–6 in evidence). Respondent also returned the $50.00 sum to grievant.

An attorney associated with the new law firm retained by grievant testified at the committee hearing. According to that attorney, respondent did not forward to the firm any papers, documents, or pleadings in connection with the *Brinkley* matter. On January 8, 1987, the firm filed a complaint in grievant's behalf (Exhibit P–8 in evidence). The case was subsequently settled on July 24, 1989. In response to a question by the panel chair as to whether respondent's failure to file a complaint had any effect on grievant's ability to recover damages, the attorney testified as follows:

> Well, the effect it had was that there was [sic] within the contract of the warehouse rules that in order to recover damages, there had to be a claim made within one year and I didn't get the case until 1986, which was well in excess of that one-year limitation within the contract itself.
>
> Fortunately—well, I argued a summary judgment motion prior to the settlement of the case regarding that limitation and regarding the case itself, based upon the statutory law concerning warehouse liens, and I was successful in the summary judgment motion and the case was continued on to trial.
>
> However, when it came down to the trial date, it was questioned whether or not I would be successful again at that time as to any motion put forth by the defendant regarding that limitation.
>
> That, in turn, forced me to settle at an amount that I thought was reasonable based upon whether we would be successful if we continued to trial. [T23–15 to 24–11.]

At the hearing, the panel admitted into evidence a letter from the Assistant Supervisor, Index Unit, from the Superior Court Clerk's Office, stating that there was no record of a complaint filed by respondent in the *Brinkley* matter (Exhibit P–9 in evidence).

Respondent neither answered the formal ethics complaint nor appeared at the committee hearing of August 9, 1989, despite having received notice of the hearing by certified mail. On the morning of the hearing, the presenter attempted to contact respondent at the Prosecutor's office. He was advised that respondent could not be reached at that time. At the direction of the panel, the hearing began, albeit one-half hour after its

scheduled time. After the hearing was completed and while the panel was deliberating on the matter, respondent appeared and requested to be heard. The presenter and the witnesses, however, had already left. Accordingly, the panel directed respondent to file a formal request to reopen the matter and to serve a copy of the request on the presenter. At no time did respondent ever file such a request.

The committee concluded that respondent had engaged in unethical conduct by (1) failing to prosecute grievant's claim as instructed, in violation of *R.P.C.* 1.2(a); (2) failing to act with reasonable diligence and promptness, in violation of *R.P.C.* 1.3; (3) failing to return to grievant the original agreement between her and the moving company, in violation of *R.P.C.* 1.15(b); and misrepresenting the status of the matter to grievant on several occasions, both verbally and in writing, in violation of *R.P.C.* 8.4(c).

## CONCLUSION AND RECOMMENDATION

Upon a *de novo* review of the entire record, the Board is satisfied that the conclusions of the committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence. The Board disagrees, however, with the committee's finding that respondent's conduct was not grossly negligent, in violation of *R.P.C.* 1.1(a). In addition, the Board finds that respondent violated not only the Rules of Professional Conduct cited in the panel report, but also *DR* 6-101(A), *DR* 7-101(A)(1) and (2), *DR* 9-102(B)(4), and *DR* 1-102(A)(4).[2]

As stated in the above factual recitation, for a period of five years—between May 1981 and June 1986—respondent failed to

---

[2]The Rules of Professional Conduct replaced the Disciplinary Rules effective September 10, 1984. Respondent's actions took place both before and after that date. Hence, both the Disciplinary Rules and the Rules of Professional Conduct apply.

take any action to protect grievant's interests, despite his duty to represent her in a diligent and responsible fashion. As a result of respondent's neglect, grievant was forced to retain the services of another attorney to obtain competent representation. As the record discloses, respondent's inaction detrimentally affected grievant's prospects to secure a more favorable settlement, in light of the contractual limitation that barred the filing of grievant's claim after the expiration of the one-year period.

More egregious, however, were respondent's numerous instances of misrepresentation to grievant that suit had been instituted and was proceeding apace. Respondent intentionally misled grievant to believe that a complaint had been filed and a trial date would be forthcoming.

At the Board hearing, respondent perpetuated the above misrepresentation by insisting that he had filed the complaint (BT12–19 to 21, 14–1 to 22, 17–5 to 6).[3] The Board was gravely disturbed by respondent's lack of candor and also by his cavalierism toward the disciplinary proceedings. When asked why he had not promptly appeared at the committee hearing, respondent revealed that it had "slipped his mind" because he does not carry a calendar (BT9, 10).

Gross negligence of a matter and failure to cooperate with ethics authorities have previously warranted a period of suspension from the practice of law. In *Matter of Smith*, 101 *N.J.* 568, 503 *A.*2d 846 (1988), the Court imposed a three-month suspension on an attorney who failed to pursue an estate matter with diligence, failed to reply to several letters from the district ethics committee, and failed to file an answer to the formal ethics complaint.

In *Smith*, however, the attorney did not misrepresent the status of the matter and caused no monetary injury to his

---

[3]BT denotes the transcript of the Board hearing on February 21, 1990.

client. Furthermore, Smith expressed remorse for his actions and readily admitted his wrongdoing. The Court also noted that he had no prior disciplinary record. Here, however, respondent led his client to believe that the matter was proceeding smoothly; adversely affected her chances for a greater recovery; displayed no contrition for his conduct; and has been the subject of two prior disciplinary actions for similar conduct. On May 28, 1982, respondent received a private reprimand for failing to pursue a matter and to communicate with his client for a period in excess of four years. On October 18, 1988, respondent was publicly reprimanded for grossly neglecting a case, failing to keep his client informed of the status of the matter, allowing the complaint to be dismissed for failure to answer interrogatories, and repeatedly misrepresenting to the client that the case was progressing satisfactorily, even after its dismissal.

In view of the foregoing, the Board unanimously recommends that respondent be suspended for a period of six months. One member did not participate.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for administrative costs.

DATED: May 25, 1990.